UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOEL BUCHWALD, in his capacity as the Executor of the Estate of ARTHUR BUCHWALD**,<br>　　　　　Plaintiff,<br><br>　v.<br><br>**CITIBANK, N.A.**,<br><br>　　　　　Defendant. | Civil Action No. 13-cv-210 (RLW) |

# **MEMORANDUM OPINION**[1]

## I.　INTRODUCTION

Previously, this Court granted Defendant Citibank, N.A.'s (Citibank) motion to dismiss against Plaintiff Joel Buchwald (Buchwald), in his capacity as executor of the estate of his late father, the writer Art Buchwald. Buchwald now moves this Court to amend the judgment and for leave to file an amended complaint, which adds an additional count and supplements the facts. (*See generally* Dkt. No. 11). Because this Court made no error in its previous decision, the motion to amend will be denied, and accordingly, Buchwald's motion for leave to file an amended complaint is denied as well.

---

[1] This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or alternatively, to assist in any potential future analysis of the res judicata, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. *See* FED. R. APP. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011) (citation omitted).

## II. FACTUAL SUMMARY

### A. Background

In the 1980s, Art Buchwald retained Kenneth Starr (Starr) and his firms Starr and Company, LLC (Starrco) and/or Starr Investment Advisors, LLC (SIA), to provide financial services. (Dkt. No. 1-4, ¶ 4).[2] Art Buchwald owned a residence in Martha's Vineyard. (*Id.* ¶ 10). In late 2006, his health was in serious decline; he would die on January 17, 2007. (*Id.* ¶¶ 3, 11). "By November 1, 2006 . . . Starr and his employees, Arlene Graff and Patricia Dorn had obtained the approval of Citibank to open a HELOC [home equity line of credit] on the Martha's Vineyard Property. [Art] Buchwald was not aware of, and certainly had not approved, of the application for the HELOC." (*Id.* ¶ 13). The HELOC states it "will be governed by the law of the state where the Property is located," i.e., Massachusetts. (Dkt. No. 6-2, at 8 (§ 23)).

Around November 29, 2006, Graff and Dorn prepared a "Massachusetts General Durable Power of Attorney" that "purports to effect the appointment by [Art] Buchwald of Dorn as his attorney-in-fact." (Dkt. No. 1-4, ¶ 14). Among other things, the Power of Attorney states that it was executed in Massachusetts, that it "will be governed by the laws of the Commonwealth of Massachusetts without regard for conflicts of law principles," and that Art Buchwald "agree[s] to indemnify [any] third party for any claims that arise against the third party because of reliance on this power of attorney." (Dkt. No. 6-1, at 6). However, Art Buchwald did not execute the Power of Attorney, and it has an invalid date. (*See* Dkt. No. 1-4, ¶¶ 15, 21). The Power of Attorney "was, in effect, an attempt to retroactively authorize the creation of an account that was originated without any authority." (*Id.* ¶ 23). Citibank

---

[2] For the purposes of this Memorandum Opinion, the facts as alleged by Buchwald are assumed to be true.

advanced $100,000 to Dorn between December 11, 2006 and January 19, 2007; neither Art Buchwald, nor his estate, ever received any of the money. (*Id.* ¶¶ 24, 28). Citibank states that the Power of Attorney "was publically recorded with the mortgage supporting the HELOC . . . on January 18, 2007." (Dkt. No. 6, at 5).

After Art Buchwald's death in 2007, the Probate Division of the Superior Court of the District of Columbia appointed Starr executor of his estate. (Dkt. No. 1-4, ¶ 29). Around June 2010, the United States charged Starr in an Indictment with fraud, wire fraud, and money laundering. *See United States v. Starr*, No. 10-cr-520 (SAS), Dkt. No. 71 (S.D.N.Y. 2011). Shortly thereafter, Art Buchwald's son, Plaintiff Joel Buchwald, successfully petitioned the Probate Division to succeed Starr as executor, and assumed that role on January 7, 2011. (*See* Dkt. No. 1-4, ¶ 31).

**B.    Procedural History**

Joel Buchwald learned of "the scheme perpetrated by Starr and his associates to extract funds by means of the fraudulent HELOC," (*id.* ¶ 32), and filed a Complaint in D.C. Superior Court on January 7, 2013. The Complaint alleges one Count of negligence against Citibank "in approving the loan application effected in Buchwald's name by persons affiliated with Starr, Starrco and/or SIA." (*Id.* ¶ 34). Because the parties are diverse and the amount in controversy exceeds $75,000, Citibank properly removed to this Court on February 18, 2013, (Dkt. No. 1), and then moved to dismiss pursuant to FED. R. CIV. P. 12(b)(6) the following week, (Dkt. No. 6). In his Opposition, Buchwald "request[ed] that he be afforded leave to file an amended complaint in the event that the pending motion is granted in whole or in part." (Dkt. No. 7, at 12) (citation omitted). He did not file an associated motion to amend, nor did he include a proposed pleading as required by the Local Rules. *See* LCvR 7(i).

This Court held a hearing on Citibank's motion to dismiss on April 29, 2013, and granted the motion from the bench. The Court found that Buchwald's claim rested upon a theory of negligence that had never been extended to a third party not implicated in the wrongdoing. At the conclusion of the hearing, counsel for Citibank asked whether the ruling was a dismissal without leave to amend, and the Court answered in the affirmative.

Buchwald has now filed a motion to amend the judgment and for leave to file an amended complaint. He claims two errors: one, "in declining to allow Plaintiff the benefit of tolling during the pendency of Starr's executorship," and two, in dismissing the case with prejudice rather than without, thus disallowing Buchwald to file an amended complaint. (*See* Dkt. No. 11-2, at 3). Attached to Buchwald's motion is a proposed First Amended Complaint (FAC), which includes two counts; in addition to the negligence count, there is an additional count for a "Declaration that the HELOC is Null and Void." (Dkt. No. 11-1, at 9-10). The FAC adds two points to the "substantive allegations" section. *One*, Starr and his employees "conducted all of their banking business with Citibank and had established a relationship with Citibank." Likewise, "[Art] Buchwald also had a prior banking relationship with Citibank, which held exemplars of his signature." (*Id.* ¶¶ 14-15). *Two*, after Citibank rejected a $50,000 check for an irregular signature, the bank "was thereafter on notice that those persons purporting to act on [Art] Buchwald's behalf were willing to prepare and present forged and irregular documents. This awareness should have prompted Citibank to investigate further, and to demand direct verification from [Art] Buchwald that Ms. Dorn was acting with proper authority, particularly in light of Citibank's familiarity with both [Art] Buchwald and Starr." (*Id.* ¶ 29).

### III. LEGAL STANDARDS

#### A. Standard For Altering Or Amending A Judgment

A motion to alter or amend a judgment is brought pursuant to FED. R. CIV. P. 59(e). Motions to alter or amend under Rule 59(e) are disfavored, "and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057-58 (D.C. Cir. 1998)). There are three reasons why a Rule 59 motion may have merit. Such a motion may be granted if (1) there is an "intervening change of law;" (2) the movant presents "new evidence that was not previously available;" or (3) the movant "establish[es] an error of law or fact in the court's original opinion." *See Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006) (citation omitted). A Rule 59 motion is not a means by which to "reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995).

#### B. Rule 15 Standard

FED. R. CIV. P. 15(a)(1) provides that a party "may amend its pleading once as a matter of course within" a limited amount of time; otherwise, pursuant to FED. R. CIV. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, a court should deny a motion to amend a complaint "if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (per curiam). In addition, if "parties to the action can show that prejudice will result by allowing the amendment or that the proposed amendment is totally frivolous, leave to amend will be

denied." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1473 (3d ed. 2010) (WRIGHT, MILLER & KANE).

IV. ANALYSIS

    A. **This Court Did Not Commit Error In Determining That The Statute Of Limitations Should Not Have Been Tolled**

Buchwald cannot demonstrate any of the three elements of a successful Rule 59 motion. There has been no change in the law, and Buchwald concedes this. Meanwhile there are two problems with Buchwald's effort to supplement his complaint with new information. The first problem is that the allegedly key piece of new information is not new. Buchwald claims to have "supplemented the factual allegations pertinent to the applicable tolling doctrine," pointing the Court to information in the FAC at paragraphs 14 and 29. (*See* Dkt. No. 11-2, at 11). The "new" information at paragraph 29 of the FAC, that Starr's staff presented a forged check to Citibank, appeared in the original complaint. (*Compare* Dkt. No. 11-1, ¶ 29 *with* Dkt. No. 1-4, ¶ 25). And while Buchwald refers to "new" information in paragraph 14 of the FAC, that Starr had an established relationship with Citibank, the FAC adds that "[Art] Buchwald also had a prior banking relationship with Citibank . . . ." (Dkt. No. 11-1, ¶ 15). The FAC seems to be implying that because Citibank had a relationship with Starr that they valued more than their relationship with Buchwald, the bank was willing to overlook fraudulent behavior. This suggestion does not rise above mere speculation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that factual allegations must "raise a right to relief above the speculative level"). The second problem is that the purportedly new information was previously available, and Buchwald presents no reason as to why this information could not have been included in the original complaint. *See Krakower*, 439 F.3d at

759. Buchwald must demonstrate that this Court erred with respect to the law or the facts, but he fails to do so here.

Buchwald claims that this Court was "incorrect" in finding that one of the tolling doctrines alleged to be at issue here "applies only against parties that actively participated in the concealment," because "courts have applied this tolling doctrine not only as to intentional wrongdoers who actively prevented the principal from pursuing its claim, but also to claims against other persons." (Dkt. No. 11-2, at 5). For support, he cites two cases discussed by the parties in the motion to dismiss briefing, *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501 (1997), and *Bremer v. Williams*, 210 Mass. 256 (1911). Neither case supports Buchwald's claim of error. In *Demoulas*, the statute of limitations was not tolled against a third party not implicated in the wrongdoing. Instead, the court tolled the statute of limitations "[b]ased on the fiduciary relationship that existed between key defendants as corporate directors and the plaintiff as a shareholder . . . ." 424 Mass. at 522. The court also found "[a] further basis . . . for tolling the limitations period": "The directors all either benefitted from, or acquiesced in, the activities that are the basis of the plaintiff's claims on behalf of the corporations, and the limitations period therefore had not run on these claims before the commencement of the action." *Id.* at 523 (footnote omitted). In neither situation did the court rest its decision on a third party's relatedness to the bad deeds at issue.

*Bremer* is of no help to Buchwald either. In that case, a trustee of two wills embezzled money from one estate to pay taxes due for the other. Later, when it was discovered that money was missing, the trustees under the will that had the money stolen sought to recover their money from the trustee who stole it. As in *Demoulas*, this is not a case about the statute of limitations with respect to a third party. Perhaps *Bremer* would support the proposition that

the statute of limitations would be tolled for Buchwald to bring a claim against Starr, but the case does not support the proposition that he may similarly get the benefit of tolling in a claim against Citibank. Thus, this Court did not commit any error in its determination on this point.

Buchwald also claims that "under the analogous adverse domination doctrine, this Court itself has on at least two occasions held that it is applicable to claims against persons other than the person(s) who adversely dominated the business entity in question." (Dkt. No. 11-2, at 5). For support, he again cites two cases previously discussed by the parties in the motion to dismiss briefing, *BCCI Holdings (Luxembourg), S.A. v. Clifford*, 964 F. Supp. 468 (D.D.C. 1997), and *Resolution Trust Corp. v. Gardner*, 798 F. Supp. 790 (D.D.C. 1992). But again, these cases do not support an argument of error because they do not deal with negligent third parties not implicated in the wrongdoing.

In *Clifford*, defendants Clark Clifford and Robert Altman were "allegedly corrupt senior managers and officers of BCCI." 964 F. Supp. at 472-73. The court denied a motion to dismiss with respect to the issue of statute of limitations in part because plaintiffs had alleged that BCCI "was adversely dominated by corrupt prior senior managers and directors, who, in conjunction with Defendants Clifford and Altman engaged in the harmful acts." *See id.* at 479. The issue of whether the statute of limitations should be tolled for someone who did not adversely dominate the business entity in question—but "who engage[d] in actionable conduct . . . concealed through the adverse domination"—is discussed in footnote nine. There, the court did find that for another defendant, Baldwin Tuttle, who was neither an officer nor director of BCCI, that the adverse domination theory did toll the statute of limitations. *Id.* at 481 n.9. Among other acts, Tuttle "assisted in the preparation and submission of multiple false and misleading documents in order to conceal the scheme concocted by BCCI's corrupt senior

managers." *Id.* at 480 n.8. Tuttle's acts can hardly be compared to those of Citibank in this case. Citibank relied on a notarized document, and did not prepare or submit anything false or misleading in an effort to conceal a scheme. Buchwald even acknowledges that the Power of Attorney at issue and the mortgage supporting the HELOC were publically filed in 2007. (*See* Dkt. No. 7, at 9; *see also* Dkt. No. 6, at 5).

The other case cited by Buchwald with respect to the adverse domination doctrine is cited in footnote nine of *Clifford*: *Resolution Trust Corp. v. Gardner*. But like *Clifford*, *Gardner* stands for the unremarkable proposition, endorsed by this Court at oral argument on the motion to dismiss, that actors other than officers or directors can toll the statute of limitations. *See* 798 F. Supp. at 795. But the reason that Buchwald's motion does not reveal any legal error is that *Gardner* does not stand for the proposition that a third party not implicated in the wrongdoing can toll the statute of limitations. The court in *Gardner* noted, among other key facts, that the defendant "was in a fiduciary relationship with the corporation, which further decreased the likelihood of [the corporation] bringing suit against him." *Id.* at 796. Moreover, the cases cited for support in *Gardner*, which refer to actors other than officers and directors, all deal with actors involved with the wrongdoing at issue. *See, e.g.*, *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873 (9th Cir. 1984) (dealing with an accountant who allegedly issued false and misleading reports relied upon by stockholders to purchase stock); *Bornstein v. Poulos*, 793 F.2d 444 (1st Cir. 1986) (dealing with an attorney who violated fiduciary duties to the corporation at issue); *In re Am. Cont'l Corp./Lincoln Sav. and Loan Sec. Litig.*, 794 F. Supp. 1424 (D. Ariz. 1992) (dealing with a law firm for which there were material questions as to whether they knowingly assisted in fraud). These cases are all

distinguishable from the present case, where Citibank was presented with a notarized document and acted in reasonable reliance on it.

While Buchwald's plight remains regrettable, he has pointed to no error in this Court's previous determination that tolling the statute of limitations for a negligence claim against Citibank would not be appropriate.

### B. This Court Properly Dismissed Buchwald's Complaint With Prejudice

Buchwald argues that this Court committed error in granting Citibank's motion to dismiss with prejudice. But this argument runs afoul of D.C. Circuit precedent. A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Institute of Washington, Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992). The D.C. Circuit's recent majority and concurring opinions in *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012), are particularly instructive. Notably Judge Kavanaugh stated: "Rule 12(b)(6) dismissals are typically with prejudice and do not require particular justification by the district court." 703 F.3d at 132 (Kavanaugh, J., concurring). *See also id.* at 133 ("[A] Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise.").

This Court provided adequate reasoning as to why Buchwald's original Complaint was denied, and why it was denied with prejudice. Although Buchwald now seeks leave to amend his complaint under FED. R. CIV. P. 15, "once a final judgment has been entered, a court cannot permit an amendment unless the plaintiff 'first satisf[ies] Rule 59(e)'s more stringent standard' for setting aside that judgment." *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Had Buchwald included his declaratory judgment count in the original Complaint, the statute of limitations analysis may

have addressed that claim differently. But he did not. "Since th[is] court declined to set aside the judgment under Rule 59(e), it properly conclude[s] that [Buchwald]'s motion to amend under Rule 15(a) [i]s moot." *See id.*

Generally, when a complaint "contain[s] only one claim, the right to amend once as a matter of course prior to a responsive pleading would be terminated by a judgment of dismissal. Thereafter, efforts to amend a complaint presumably must first be directed to reopening the judgment under Rule[ ] 59 . . . ." *Cassell v. Michaux*, 240 F.2d 406, 407-08 (D.C. Cir. 1956) (citation omitted). "[A] judgment generally will be set aside only to accommodate some new matter that could not have been asserted during the trial, which means that relief will not be available in many instances in which leave to amend would be granted in the prejudgment situation." WRIGHT, MILLER & KANE § 1489; *accord Proskauer Rose, LLP v. Blix Street Records, Inc.*, 384 F. App'x 622, 625 (9th Cir. 2010) (denying motion for leave to add breach of contract claim after entry of judgment); *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) ("When a party seeks to amend a complaint after an adverse judgment, it . . . must shoulder a heavier burden. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60.") (citation omitted). Because Buchwald does not satisfy the Rule 59 standard, his Rule 15 motion will be denied. *Cf. United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 825 (8th Cir. 2009) ("[A] post-judgment motion for leave to assert an entirely new claim is untimely.").

At oral argument, counsel for Buchwald pointed out that in the Opposition to the Motion to Dismiss, he asked for leave to amend his complaint "in the event that the pending motion is granted in whole or in part." (Dkt. No. 7, at 12) (citation omitted). This request is

plainly insufficient under both the Local Rules and settled precedent in this Circuit. "[A] bare request in an opposition to a motion to dismiss [for leave to amend]—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (citation omitted). *See also* LCvR 7(i) (noting a motion for leave to amend "shall be accompanied by an original of the proposed pleading as amended," which Buchwald did not provide in his Opposition). Thus, a single sentence in Buchwald's Opposition referencing leave to amend, offering no explanation as to why leave to amend should be granted, combined with his failure to include a proposed amended complaint despite understanding the grounds raised for dismissal in Citibank's motion to dismiss, reveals that this Court did not err in granting Citibank's motion to dismiss with prejudice.

### C. Buchwald's Proposed Count For A Declaration Would Be Futile

At the July 29, 2013 hearing on Buchwald's motion to amend and for leave to file an amended complaint, this Court asked for additional briefing regarding whether an amendment that would only leave a count for a declaratory judgment would be futile because under Massachusetts law, the Declaratory Judgment Act does not serve as an independent source of standing. *See, e.g.*, *Ten Persons of the Commonwealth v. Fellsway Dev. LLC*, 951 N.E.2d 648 (Mass. 2011).

Nothing in the parties' briefs indicates that Buchwald could maintain this case following the dismissal of his negligence claim, leaving only a count for a declaration. Chapter 231A is the section of the Massachusetts General Laws titled "Procedure for Declaratory Judgments." According to *Ten Persons*, "[i]t is settled that G.L. c. 231A does not provide an independent statutory basis for standing." 951 N.E.2d at 660 (citations omitted). Because this

SUMMARY MEMORANDUM OPINION; NOT INTENDED
FOR PUBLICATION IN THE OFFICIAL REPORTERS

Court did not err regarding the dismissal of the negligence claim, a complaint only for a declaration would be futile, because Buchwald would lack standing. While in his supplemental memorandum Buchwald states that "federal district courts have authority to issue declaratory judgments," (Dkt. No. 15, at 2), this power is not without limit. Similar to the law in Massachusetts, the federal Declaratory Judgment Act "is not an independent source of federal subject matter jurisdiction." *Seized Property Recovery Corp. v. U.S. Customs and Border Protection*, 502 F. Supp. 2d 50, 64 (D.D.C. 2007) (quoting *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995)). Without an actual case or controversy, this Court cannot render a declaratory judgment under the federal Declaratory Judgment Act, or its Massachusetts analogue. *See C&E Water Services, Inc. of Washington v. District of Columbia Water and Sewer Authority*, 310 F.3d 197, 201 (D.C. Cir. 2002).

## V. CONCLUSION

This is a frustrating case. Art Buchwald put his trust in Starr, and Starr and his team allegedly violated that trust and stole money from him. But that does not mean that Buchwald's ability to seek redress for that wrong is limitless. Citibank relied on a notarized HELOC, and there is nothing in the record to indicate that the bank participated with Starr or his related entities in the scheme to defraud Art Buchwald. This Court properly ruled that the negligence count should be dismissed, and Buchwald's motion to amend raises no new law or facts that change that determination. Therefore the motion to amend is **DENIED**. For that reason, and independently for the reason that a standalone declaratory judgment count would be futile, Buchwald's Rule 15 motion for leave to amend is **DENIED** as well.

Date: September 17, 2013

ROBERT L. WILKINS
United States District Judge